# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTH DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **GROUNDWORKS OPERATIONS, LLC** f/k/a **JES OPERATIONS, LLC,** d/b/a **GROUNDWORKS** 911 Stelzer Road Columbus, Ohio 43219 | Case No. 2:20-CV-03211 **Judge Sarah D. Morrison** |
| **GROUNDWORKS OBA, LLC** n/k/a **GROUNDWORKS OHIO, LLC** d/b/a **OHIO BASEMENT AUTHORITY** 911 Stelzer Road Columbus, Ohio 43219 | **Magistrate Judge Chelsey M. Vascura** |
| **Plaintiffs,** | |
| v. | |
| **LAWRENCE JANESKY** 725 Breakneck Hill Road Middlebury, CT 06762 | |
| and | |
| **CONTRACTOR NATION CORPORATION,** c/o Lawrence M. Janesky, Agent 60 Silvermine Road Seymour, CT 06483 | |
| and | |
| **MID-STATE BASEMENT SYSTEMS, LLC** c/o Wesley Martin, Agent 5476 Camlin Place Westerville, OH 43081 | |
| **Defendants.** | |

# PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), and Ohio Rev. Code § 4165.02, Plaintiffs Groundworks Operations, LLC ("JES") and Groundworks OBA, LLC ("OBA") respectfully move this Court for a preliminary injunction. For the reasons explained more fully in Plaintiffs' Complaint and the attached Memorandum in Support, Plaintiffs are entitled to a Preliminary Injunction directing Defendants, and any person or entity acting in concert with Defendants, to retract their false statements to customers who were provided with copies of the Flyer (as defined in the Memorandum in Support) and prohibiting Defendants from producing or distributing any further false or misleading statements calculated to reach Plaintiffs' customers or prospective customers.

WHEREFORE, Plaintiffs respectfully pray the Court enter an Order:

1. Granting the Motion;

2. Directing Defendants to retract their false statements to those customers who were provided copies of the Flyer;

3. Prohibiting the Defendants from producing, distributing, or communicating similar false or misleading statements in any medium, whether in hard copy, digital format, in person communication, on social media platforms, or any other format calculated to reach customers or prospective customers; and

4. Awarding Plaintiffs any and all such other and further relief as the Court may deem just and proper.

CHAR2\2296673v2
CO\6467877.3

Respectfully Submitted,


*/s/ Catherine L. Strauss*
Catherine L. Strauss (0072980)
Lydia Reback (097766)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, OH 43215
Phone: 614.462.2700
Fax: 614.462.5135
Email: Catherine.Strauss@icemiller.com
 Lydia.Reback@icemiller.com
***COUNSEL FOR PLAINTIFFS***


*/s/ Paul J. Peralta*
Paul J. Peralta (admission pro hac vice forthcoming)
Benjamin Shook (admission pro hac vice forthcoming)
MOORE & VAN ALLEN, PLLC
100 N. Tryon St., Suite 4700
Charlotte, N.C. 28202
Phone: 704.331.1000
Email: paulperalta@mvalaw.com
 benshook@mvalaw.com
***COUNSEL FOR PLAINTIFFS***

## MEMORANDUM IN SUPPORT

Plaintiffs Groundworks Operations, LLC f/k/a JES Operations, LLC d/b/a Groundworks ("Groundworks") and Groundworks OBA, LLC n/k/a Groundworks Ohio, LLC d/b/a Ohio Basement Authority ("OBA") (collectively, "Plaintiffs"), respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction against Defendants Lawrence Janesky ("Janesky"), Contractor Nation Corporation ("Contractor Nation"), and Mid-State Basement Systems, LLC ("Mid-State") (collectively, "Defendants").

## PRELIMINARY STATEMENT

The Defendants' conduct underlying this action is just the latest part of their efforts to unlawfully compete with and damage Plaintiffs and their business operations. The Parties here are direct competitors in the foundation repair and basement waterproofing industry, and, beginning as early as 2017, Janesky engaged in efforts to target the employees of an affiliate of JES by, among other things, making false and disparaging statements regarding JES, its owners, and its affiliates to various employees. Despite Plaintiffs (or their affiliates) obtaining injunctions, restraining orders, and, ultimately, a settlement agreement between them and Defendants over the past three years—all of which prohibit Defendants from engaging in such conduct—Defendants have continued their campaign to disparage and malign Plaintiffs.

Here, pivoting from targeting Plaintiffs' employees, Defendants now resort to false advertising to target customers. Specifically, Defendants drafted and distributed a flyer, a copy of which was filed as Exhibit B to Plaintiffs' Complaint [Dkt. 1-2], and is attached hereto as Exhibit 1 (the "Flyer"), containing numerous false and misleading statements concerning both the Defendants and the Plaintiffs. As described in the Complaint, the Flyer was willfully and maliciously crafted and distributed for the purpose of misleading, and causing disruption and concern among OBA's customer base by misrepresenting the nature, characteristics, and

4

qualities, of the services provided by Plaintiffs. As a result, Defendants have engaged in false advertising in violation of the Lanham Act (15 U.S.C. § 1125(a)), commercial defamation, and deceptive trade practices under Ohio law (Ohio Rev. Code §4165.01(10)).

Defendants should be enjoined from spreading lies. Plaintiffs are entitled to a preliminary injunction to prevent further irreparable harm resulting from Defendants unlawful conduct and false advertising.

## STATEMENT OF THE FACTS

### A. The Parties are Competitors in the Basement Waterproofing and Foundation Repair Industry.

OBA is a local basement waterproofing and foundation repair business in the greater Columbus area providing complete solutions for basement waterproofing, foundation repair, crawlspace encapsulation, and more. (Declaration of Matt Malone, attached hereto as Exhibit 2, ("Malone Dec."), at ¶11). In order to protect its legitimate business interests, OBA requires many of its employees to enter into Confidentiality, Non-Competition and Non-Solicitation Agreements (the "Protective Covenants"). *Id.*

Groundworks is a foundation repair and basement waterproofing business with multiple brands, such as OBA. *Id.* at ¶ 3. Groundworks' businesses are located in states extending from Virginia to Colorado. *Id.* Groundworks is owned by its numerous founders, including its Chief Executive Officer, Matt Malone, as well as the Cortec Group, who partnered with and invested in Groundworks in early 2020. *Id.* at ¶ 4. Groundworks and OBA are direct competitors of Defendants Mid-State and Contractor Nation. *Id.* at ¶ 5.

Janesky owns businesses known as Basement Systems, Inc. and Contractor Nation, from which he operates a loosely affiliated network of basement waterproofing and foundation repair dealers located throughout the United States. *Id.* at ¶ 6. Indeed, Contractor Nation boasts of a

5

national and international "network" of contractors who focus on foundation repair and basement waterproofing. *Id.* Janesky and Contractor Nation provide administrative, sales, and marketing support, as well as sell various waterproofing and crawlspace encapsulation materials, to so-called "network dealers" who, in turn, pay Janesky and his businesses, including Contractor Nation, for such materials and services. *Id.*

## B. Defendants Have Raided Plaintiffs' Employees and Tortiously Interfered with Plaintiffs' Contracts

### i) The Master Dry Targeting of Groundworks North Carolina Employees

As a result of Groundworks' prior acquisitions, which have included so-called "network dealers" located in North Carolina, Ohio, and Indiana, by example, Janesky has responded by specifically targeting Groundworks' subsidiary's employees while disparaging and maligning Groundworks and its principals in the process to induce such employees to resign, all for the purpose of disrupting and injuring Groundworks business operations. For example, in 2017, within days after Groundworks had acquired a North Carolina business based in Winston-Salem known as Tar Heel Basements Systems, LLC, ("Tar Heel"). Janesky opened a competing business in the same city via his Knoxville, Tennessee based-dealer called Master Service Companies, LLC, d/b/a Master Dry, and targeted approximately 110 employees for hire from Tar Heel. *Id.* at ¶ 7. During this process, Janesky, through Master Dry, disparaged and maligned Groundworks to numerous employees in order to induce approximately 30 of them to resign and hire on with Master Dry. *Id.*

### ii) The Master Dry Targeting of Groundworks Indiana Employees—The Indiana Litigation

Also, in 2017, within days of the raid on the employees of Tar Heel, Janesky by and through Master Dry (which he has since acquired), targeted another business owned by

Groundworks, located in Indianapolis known as Indiana Foundation Service ("IFS"). *Id.* at ¶ 8. Several IFS employees were lured away from IFS to start up the new Master Dry business in Indianapolis. *Id.* There, as with events described below, Janesky, by and through Master Dry, identified the employees for hire, conducted meetings to extol the virtues of their dealer network and new business while at the same time disparaging Groundworks in order to induce the Groundworks affiliate employees to abandon their employment in favor of the new so-called network dealer. *Id.* As a result of Master Dry's illicit conduct, Groundworks filed suit resulting in a favorable outcome to Groundworks. *Id.* at ¶ 9. Specifically, the Court entered an injunction prohibiting Master Dry from engaging in certain breaching conduct and requiring affirmative representations of compliance under oath. *Id.*

In each of the aforementioned incidents, Janesky knew and was aware that the employees of the acquired Groundworks companies had signed Protective Covenants, including non-competition and non-solicitation covenants. Further, Janesky knew that luring away a substantial number of employees would cripple the Groundworks subsidiary and damage its goodwill and standing in the local market. Indeed, as part of the efforts to lure away these employees and injure Groundworks' operations, Defendants published false and disparaging statements concerning Groundworks, Groundworks' affiliate companies, and certain owners of Groundworks. *Id.* at 14.

Specifically, Janesky and other agents or representatives of Defendants made and published statements directed at Groundworks affiliate employees claiming, among other things, that Groundworks operates as a "Wall Street" "private equity" enterprise that buys and "flips" foundation repair/basement waterproofing businesses. *Id.* The purpose of such statements was to shake Groundworks affiliate employees' long-term confidence in Groundworks and coerce those

employees to accept employment with Defendants or one of their affiliated companies in order to damage Groundworks' business operations.

### C. Defendants' Malicious and Vengeful Conduct Toward OBA—The Ohio Litigation

Before Groundworks acquired OBA, OBA was a network dealer and, over time, purchased millions of dollars of product from Janesky and Contractor Nation. *Id.* at ¶ 10. Groundworks acquired OBA in July 2019 to continue and expand its business. *Id.* As with other Groundworks affiliates mentioned above, Janesky responded to Groundworks' acquisition of OBA by unlawfully targeting OBA's employees by, among other things, disparaging and maligning Groundworks, OBA, and its principals. *Id.* at ¶ 12.

Specifically, despite knowing that OBA employees are subject to post-employment restrictions, on or about August 31, 2019, weeks after Groundworks acquired OBA, Janesky and Mid-State hosted a meeting at Mid-State's newly established Columbus facility to which they invited tens of OBA's employees. *Id.* at Exhibit A (the "State Court Verified Complaint"), ¶ 23. No employees of any other direct competitor to Mid-State were in attendance nor contacted for recruitment. *Id.*

Prior and subsequent to that August 31, 2019 meeting, Janesky and Mid-State repeatedly targeted and recruited many of OBA's employees by way of emails, text messages, telephone calls, and voicemails. In these communications, Janesky or other agents or representatives of Defendants repeated the false and disparaging statements to these OBA employees, including, among other things, that Groundworks operates as a "private equity" enterprise that buys and "flips" foundation repair/basement waterproofing businesses. These statements were made in order to destabilize the OBA workforce and coerce such employees to resign from OBA.

During the week of September 3, 2019, approximately fifteen (15) former OBA employees, submitted their notice of resignation from employment with OBA. State Court Verified Complaint, ¶ 27. Those employees ostensibly accepted employment with another entity owned by Janesky, Klaus Roofing of Ohio, LLC, which Janesky formed on or about September 4, 2019. *Id.* at ¶¶ 27-29. In fact, those employees were hired at the Klaus business as a ruse to avoid violating the Protective Covenants Janesky knew the employees had signed in favor of OBA. *Id.* at ¶ 30.

### D. The State Court Litigation and Settlement

On September 11, 2019, OBA filed a complaint in the Court of Common Pleas, Franklin County, Ohio (Case No. 19CV007381) (the "State Court Litigation") against Janesky, Mid-State and Contractor Nation asserting claims for Tortious Interference with Employment and Injunctive Relief based on Defendants' conduct including soliciting Plaintiffs' employees and making untrue and disparaging statements about Plaintiffs, as described in detail in the Verified Complaint. Malone Dec., ¶ 12; State Court Verified Complaint, ¶¶ 35-50. On September 19, 2019, the court in the State Court Litigation granted OBA's request for a temporary restraining order and enjoined Janesky, Mid-State, and Contractor Nation from any further solicitation of OBA employees, making disparaging or untrue statements about or concerning OBA, and using any of OBA's confidential information. (*See* Order Granting Motion for Temporary Restraining Order, attached hereto as <u>Exhibit 3</u>.) After extensive negotiation, OBA and Groundworks entered into a Settlement Agreement with Janesky, Mid-State and Contractor Nation on or about November 14, 2019 (the "Settlement Agreement"). Malone Dec., ¶ 13.

The purpose of the Settlement Agreement was to not only resolve the State Court Litigation but to prevent future interference by Defendants in Groundworks' and OBA's business

through provisions aimed at protecting the Plaintiffs' relationship with their employees. Among other things, in Section 7 of the Settlement Agreement,[1] Defendants agreed that they would "not make or publish to any employees of the Groundworks Parties any statements alleging or alluding that Groundworks operates as a "private equity" enterprise that buys and "flips" foundation repair/basement waterproofing businesses, or any similar language connoting the same . . . ." Defendants agreed to the restrictions in Section 7 of the Settlement Agreement because they had been previously enjoined from making such statements and knew that such statements were false and calculated to mislead.

### E. Defendants' Resort to False Advertising Directed at OBA's Customer Base

Pivoting from targeting OBA's employees, Defendants have taken the language of the Settlement Agreement as an opening to publish similar false and disparaging statements to OBA's customers and potential customers in the Columbus, Ohio market. Specifically, on or about June 18, 2020, OBA's Certified Field Inspector, Francis Purcell ("Mr. Purcell") obtained a copy of a flyer (the "Flyer") received by an OBA customer. (Malone Dec., ¶ 15). In addition, another OBA Certified Field Inspector, Jordan Wilson ("Mr. Wilson"), recently obtained another copy of the same Flyer from a different OBA customer in Dublin, Ohio. (Declaration of Jordan Wilson, attached hereto as Exhibit 4, ("Wilson Dec."), at ¶ 4 and Exhibit A). This customer received the Flyer from a Mid-State representative soliciting her business. Indeed, the Flyer was included in a folder and accompanied by Mid-State's Project Summary and proposal to provide basement waterproofing services for this customer. (*Id.* at ¶ 4 and Exhibit B). The customer brought the Flyer to Mr. Wilson's attention because it caused her to have concerns and confusion regarding Groundworks and OBA's services, goods, products, and business operations. *Id.* at ¶ 5.

---

[1] A copy of the Settlement Agreement can be provided to the Court upon request for *in camera* inspection.

Mid-State prepared the Flyer at the direction of and with the support of Janesky and Contractor Nation. Indeed, the Flyer contains a picture of Janesky alongside the same numerous false and misleading statements concerning Mid-State and Janesky that he has repeated in the past when recruiting the former OBA employees. (Malone Dec., ¶ 15). The false, misleading, and disparaging statements concerning Plaintiffs, include, but are not limited to, the following:

a. The Flyer states Mid-State was founded in 1987. This statement is false because Mid-State was formed August 15, 2019 according to public records in Ohio. *Id.* at ¶ 15(a).

b. The Flyer references Groundworks OBA and states that it was recently bought by a "private equity company." This statement is false because OBA was acquired by Groundworks on July 15, 2019 and has been owned by Groundworks since then. Groundworks is not and has never been a "private equity company." *Id.* at ¶ 15(b).

c. The Flyer states that the "leader" of the alleged "private equity company" is "self-proclaimed from Wall Street." This statement is false because the Chief Executive Officer of Groundworks, Matt Malone, has never worked on Wall Street nor claimed to be "from Wall Street." *Id.* at ¶ 15(c).

d. The Flyer further states that Groundworks and OBA "have stated their intentions to extract as much money as possible out of the businesses they buy." This statement is again false because neither Groundworks nor OBA have ever made such statements. Further, Groundworks reinvests millions of dollars back into its affiliated businesses, including millions annually into its Groundworks University for the professional and leadership development of its employees. Moreover, Groundworks has a long history of profit sharing with employees and grants ownership units to over 100 employees. *Id.* at ¶ 15(d).

CHAR2\2296673v2
CO\6467877.3

e. The Flyer states that Defendants "are not interested in selling our business, but continuing to build it and holding it forever as we have done since 1987." This statement is false because Janesky sold his ownership in a business known as Supportworks – which was started in 2007 – in January 2017. *Id.* at ¶ 15(e).

In addition to the above false statements, the Flyer also contains a chart purportedly comparing Mid-State to OBA. *Id.* at ¶ 16. Among other things within this chart, Defendants falsely state:

a. That Plaintiffs are owned by a hedge fund, which is false; *Id.* at ¶ 16(a).

b. That Plaintiffs have no patents, which is false because Groundworks and its affiliated companies have numerous patents and patents pending; *Id.* at ¶ 16(b).

c. That Plaintiffs have only eleven (11) offices, none of which were "started from scratch by the majority owner," which is false because Groundworks has 30 offices, seven (7) of which were opened "from scratch" in just 36 months; *Id.* at ¶ 16(c).

d. That OBA was "sold twice in 1 year", which again is false because Groundworks acquired OBA on July 15, 2019 and it is still owned by Groundworks today; and *Id.* at ¶ 16(d).

e. Finally, that Plaintiffs' goal is to "sell the company (again!)," which is false because Plaintiffs' goal is to build a nationwide foundation services business to stand for years to come. *Id.* at ¶ 16(e).

The obvious purpose of lie upon lie is to create doubt and fear in a consumer. The Flyer is meant to frighten consumers into believing that a "Wall Street" firm will take advantage of the homeowner, not do proper work, and then abandon the customer. The greater the doubt the

consumer experiences, the greater the likelihood the consumer will not choose OBA but instead select Mid-State. *Id.* at 17.

Because of the demonstrated multi-state reckless pattern of Janesky's prior conduct, it is unlikely that Defendants' use of the Flyer is an isolated event or that Defendants' conduct described herein is limited to Mid-State, OBA, or the Columbus, Ohio market. Upon information and belief, Defendants have engaged in and continue to engage in a nationwide campaign to falsely advertise their affiliated businesses while making false claims concerning Plaintiffs and their affiliated businesses located throughout the United States.

## LEGAL ARGUMENT

### A. The Applicable Legal Standard

Ordinarily, to obtain a preliminary injunction, Plaintiffs must establish: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." *Ne. Ohio Coal. For the Homeless v. Husted,* 696 F.3d 580, 590-91 (6th Cir. 2012). These four factors are "factors to be balanced, not prerequisites that must be met." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007).

However, because the injunction requested here is authorized by statute, *see* 15 U.S.C. § 1116(a) and Ohio Rev. Code § 4165.02, the Court need not consider these equitable factors. *Microsoft Corp. v. Action Software*, 136 F. Supp. 2d 735, 738-39 (N.D. Ohio 2001). "Simply fulfilling the requirements of the statute, or, in other words, fulfilling the first factor for an injunction to issue—showing a strong likelihood of success on the merits—is all that is needed

13

for the Court to issue an injunction." *Id.* (citing *U.S. v. Microsoft Corp.*, 147 F.3d 935, 943 (D.C. Cir. 1998) ("It is clear that if a statute confers a right to an injunction once a certain showing is made, no plaintiff, neither governmental agencies nor private parties, need show more than the statute specifies"); *U.S. v. Painesville*, 644 F.2d 1186, 1194 (6th Cir. 1981) (holding that district court must, under a statutory injunction, order injunctive relief upon finding of liability without considering irreparable harm)). Indeed, under the Lanham Act, injunctive relief may be obtained by showing only that Defendants' statements and representations have a tendency to deceive customers. *American Council of Certified Podiatric Physicians and Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 618 (6th Cir. 1999).

Here, Plaintiffs have demonstrated a clear violation of the Lanham Act by Defendants, which also constitutes a deceptive trade practice under Ohio law. To the extent necessary, Plaintiffs have also demonstrated that each of the four equitable factors weighs in favor of granting the requested injunctive relief.

### B. **Plaintiffs are Entitled to a Preliminary Order Enjoining Defendants' Continued False Statements and False Advertising**

The Lanham Act, codified in relevant part at 15 U.S.C. § 1125(a), prohibits any person from making any "false or misleading representation of fact, which. . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). Similarly, Ohio provides remedies, including injunctive relief, for deceptive trade practices, which includes conduct that "[d]isparages the goods, services, or business of another by false representation of fact." Ohio Rev. Code. 4165.02(10).

Here, Defendants have violated both statutes by making and continuing to make false and misleading statements regarding Plaintiffs, and to falsely advertise and promote their own

14

business in order to diminish and direct customers away from Plaintiffs' businesses. Defendants' continued false statements and false advertisements are a violation of the Lanham Act and a deceptive trade practice under Ohio law, both of which warrant the entry of a preliminary injunction to protect Plaintiffs from further irreparable injury.

**1. Plaintiffs are Likely to Prevail on the Merits of their Claims.**

To show a claim under Section 43(a) of the Lanham Act, Plaintiffs must meet a five-part test:

> (1) the defendant has made false or misleading statements of fact concerning his own product or another's; (2) the statement actually deceives or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived consumer's purchasing decisions; (4) the advertisements were introduced into interstate commerce; (5) there is some causal link between the challenged statements and harm to the plaintiff.

*Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 798 (6th Cir. 2015) (quoting *Certified Podiatric*, 185 F.3d at 613). As a prerequisite to a claim under Section 43(a), the plaintiff must allege false statements made through "commercial advertising or promotion." As long as the defendants "employ targeted promotion aimed at persuading discrete segments of the population, they will be considered commercial advertising or promotion." *Campfield v. Safelite Group, Inc.*, 2019 U.S. Dist. LEXIS 210390 at *8 (S.D. Ohio, Mar. 28, 2019) (quoting *Grubbs*, 807 F.3d at 801).

Both case law and the plain language of the Lanham Act require Plaintiffs to allege an affirmative representation that can be proven false or misleading. The statement must be either "(1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers." *Innovation Ventures, LLC v. N.V.E. Inc.*, 694 F.3d 723, 735 (6th Cir. 2012). Literal falsity "may be either explicit or conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." *Id.* at 735-36.

15
CHAR2\2296673v2
CO\6467877.3

Defendants have made literal false and misleading statements of fact concerning both their own business and Plaintiffs' businesses. Defendants state in the Flyer, among other false statements, that Plaintiffs are owned by a "private equity company," that the "leader" is "from Wall Street", and that Plaintiffs' only goal is to sell the business. Defendants also falsely state, among other things, that their own business has been around since 1987, when it was actually started thirty years later in 2017. The statements actually did deceive customers, including the customer who brought the Flyer to Mr. Wilson and explained her concerns and confusion about the services provided by Groundworks OBA after seeing the Flyer. The statements contained in the Flyer also tend to deceive a substantial amount, if not all, of its audience because the statements are intentionally false with the purpose of damaging Plaintiffs' business and soliciting Plaintiffs' customer base. Similarly, the statements are material in that they will impact customer purchasing decisions. OBA's customer also expressed her concerns to Mr. Wilson about OBA's services after seeing the Flyer, and other customers who see or hear about the contents of the Flyer will likely be confused and deceived about both Mid-State's and OBA's business operations and services. Plaintiffs have certainly demonstrated that Defendants' conduct has a "tendency to deceive customers." *Certified Podiatric*, 185 F.3d at 618.

Finally, there is a causal link between Defendants' false statements and advertisements and Plaintiffs' injury here. As a direct and proximate result of Defendants' false advertising in violation of the Lanham Act, Plaintiffs' have been and are likely to continue to be injured in the form of, among other things, loss of business and damaged goodwill and reputation. (*See* Malone Dec., ¶ 17; Wilson Dec., ¶ 6).

Defendants' false, misleading, and disparaging statements within the Flyer were willfully and maliciously crafted and distributed for the purpose of misleading, and causing disruption and

concern among, OBA's customer base by misrepresenting the nature, characteristics, and qualities, of the services provided by Plaintiffs. Defendants' conduct has caused actual confusion and concern among OBA's customer base and has actually misled customers regarding the nature, characteristics, qualities, and origin of Groundworks OBA's goods and services. Plaintiffs are entitled to the requested injunction.

### 2. Plaintiffs will be Irreparably Harmed if Defendants' False Statements and False Advertising are not Enjoined.

As noted above, "[i]rreparable injury is presumed as a result of a finding of a likelihood of confusion of purposes of the Lanham Act." *Red Roof Franchising, LLC v. Riverside Macon Group, LLC*, 2018 U.S. Dist. LEXIS 12206 (S.D. Ohio Jan. 25, 2018) (quoting *Abercrombie & Fitch v. Fashion Shops of Ky., Inc.*, 363 F. Supp. 2d 952, 966 (S.D. Ohio 2005)). The Sixth Circuit has explained that "no particular finding of likelihood of. . . irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Id.* (citing *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999). Here, not only is there presumed irreparable injury, Plaintiffs are likely to suffer actual irreparable harm absent injunctive relief. The Court need not look any further than the very customer who brought the Flyer to Plaintiffs' attention to show Plaintiffs' irreparable harm.

Defendants' continued false statements and false advertising threatens Plaintiffs and the consuming public generally. Plaintiffs' customers have already been confused and misled by Defendants' false statements and false advertisements, and additional customers will continue to be confused and misled if Defendants' conduct is allowed to continue. Defendants' willful, malicious, and continued false statements and false advertisements and promotions used to solicit Plaintiffs' customers threaten the goodwill and reputation associated with Plaintiffs'

17

businesses and customer base, and thus satisfy the irreparable harm requirement essential to obtaining a preliminary injunction.

### 3. The Irreparable Harm to Plaintiffs Outweighs any Potential Harm to Defendants.

As demonstrated above, should Defendants be permitted to continue to falsely advertise their own business and make false and misleading statements to solicit business away from Plaintiffs' businesses, the harm to Plaintiffs would be immediate and irreparable. Defendants, on the other hand, will suffer no harm, as Defendants have no privilege to make false, misleading, or disparaging statements or otherwise malign Plaintiffs and their business operations. This factor weighs strongly in favor of granting injunctive relief.

### 4. The Issuance of a Preliminary Injunction Serves the Public Interest.

Protecting the public from confusion, "which is the paramount public policy underlying the Lanham Act," is in the public interest. *Abercrombie & Fitch v. Fashion Shops of Kentucky, Inc.*, 363 F. Supp. 2d 952, 968 (S.D. Ohio 2005).

Defendants' continued false advertisements and false statements have already confused and deceived customers and will continue to do so if not enjoined. The very purpose of the Lanham Act is to prevent deception in the marketplace. The Flyer published by Defendants is aimed at the market with the intention of purposefully deceiving the public and damaging Plaintiffs goodwill, reputation, and business operations. Accordingly, an Order enjoining Defendants' unlawful conduct promotes the public interest by prohibiting Defendants from conveying false, misleading, disparaging and deceitful statements to the public.

## **CONCLUSION**

Defendants continue to make and publish false advertisements, promotions, and solicitations for the purpose of injuring Plaintiffs' businesses and customer relationships and are likely doing so throughout the country. Defendants' conduct constitutes false advertising under the Lanham Act, a deceptive trade practice under Ohio law, and commercial defamation under the common law. Accordingly, Plaintiffs respectfully request that the Court enter a preliminary injunction ordering the Defendants to do the following:

1. Retracting their false statements to those customers who were provided copies of the Flyer;

2. Prohibiting the Defendants from producing, distributing, or communicating similar false or misleading statements in any medium, whether in hard copy, digital format, in person communication, on social media platforms, or any other format calculated to reach customers or prospective customers.

Respectfully submitted,

*/s/ Catherine L. Strauss*
Catherine L. Strauss (0072980)
Lydia Reback (097766)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, OH 43215
Phone: 614.462.2700
Fax: 614.462.5135
Email: Catherine.Strauss@icemiller.com
Lydia.Reback@icemiller.com

***COUNSEL FOR PLAINTIFFS***

CHAR2\2296673v2
CO\6467877.3

Paul J. Peralta (admission pro hac vice forthcoming)
Benjamin Shook (admission pro hac vice forthcoming)
MOORE & VAN ALLEN, PLLC
100 North Tryon Street, Suite 4700
Charlotte, North Carolina 28202-4003
Telephone: (704) 331-1000
Facsimile: (704) 331-1159
paulperalta@mvalaw.com
benshook@mvalaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document is being served via the court's CM/ECF portal to counsel for Defendants this 2nd day of July, 2020.


*/s/ Catherine L. Strauss*
Catherine L. Strauss